Filing # 244795549 E-Filed 03/27/2026 04:19:06 PM
NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO.:

NOSICH & GANZ, ATTORNEYS AT LAW, a Florida Professional Limited Liability Company,

Plaintiffs,

vs.

FIRST HORIZON BANK, a Foreign Profit Corporation,

Defendants.

/

---

**COMPLAINT FOR DAMAGES**

Plaintiff Nosich & Ganz, P.A. ("Plaintiff" or the "Firm") hereby files this Complaint against Defendant First Horizon Bank ("First Horizon" or the "Bank") and as grounds thereof, state the following:

**NATURE OF THE ACTION**

1. This is an action for recovery of losses arising from unauthorized electronic funds transfers executed during a fraudulent account takeover of Plaintiff Nosich & Ganz, P.A.'s banking accounts, followed by Defendant First Horizon Bank's acceptance of unauthorized payment orders, in the absence of mutually agreed security procedures, and failure to employ commercially reasonable safeguards or timely respond after notice of fraud.

**Parties, Jurisdiction, and Venue**

2. Plaintiff, **NOSICH & GANZ, P.L**. ("Plaintiff" or the "Firm") is a Florida Professional Limited Liability Company engaged in the practice of law in Miami-Dade County, Florida.

EXHIBIT
2

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

3. Defendant, **FIRST HORIZON BANK** ("First Horizon" or the "Bank") is a foreign for-profit corporation, doing business in Miami-Dade County, Florida, and at all relevant times provided banking services to Plaintiff. First Horizon has its principal place of business located at 165 MADISON AVENUE MEMPHIS, TN 38103.

4. This Court has jurisdiction over the subject matter of this action because the amount in controversy is in excess of the minimum jurisdictional limit of the Court, exclusive of interest, attorneys' fees and costs.

5. This Court has jurisdiction over the Defendant pursuant to §48.193(1)(a)1., Fla. Stat., because Defendant conducts substantial and not isolated business activity in Florida and the acts giving rise to this action occurred in this State.

6. Venue is appropriate in this Court under § 47.011, Fla. Stat., because the banking services giving rise to this action were rendered in Miami-Dade County.

7. All conditions precedent to the maintenance of this action have been performed, have occurred, or have been waived.

**GENERAL FACTUAL ALLEGATIONS**

**Plaintiff's Legacy Accounts and Transition to First Horizon Bank**

8. The Firm established its commercial banking relationship in October 2012 with Gibraltar Private Bank & Trust Company ("Gibraltar").

9. In connection with that relationship, the Firm executed account agreements and related banking documentation governing the operation of its commercial accounts with Gibraltar.

10. The Firm maintained four banking accounts utilized for firm operating funds and client-related financial transactions.

11. In or about 2018, Gibraltar was acquired by Iberiabank Corporation ("Iberia"), and

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

the Firm's accounts were thereafter transferred and administratively integrated into Iberia as successor institution.

12. Following the acquisition, the Firm executed account documentation with Iberia governing the continuation of its banking relationship.

13. In or about 2020, First Horizon Corporation merged with Iberiabank Corporation, after which the Firm's accounts were transferred and converted to accounts maintained by Defendant First Horizon Bank as successor institution.

14. At all material times, Plaintiff maintained legacy commercial banking accounts originally opened with Gibraltar that continued in operation through the subsequent acquisitions involving Iberiabank and First Horizon.

15. Upon information and belief, Defendant's commercial banking platform utilizes dual authorization for wire transfers as a default security configuration unless a customer affirmatively elects otherwise.

16. Following the merger through which Plaintiff's accounts were transitioned to Defendant First Horizon Bank, Defendant did not conduct treasury management onboarding, security training, or consultation advising Plaintiff regarding enhanced wire-transfer security procedures or recommending implementation of dual authorization for outgoing wires.

17. Defendant did not advise Plaintiff that single-user authentication presented heightened fraud risk, that dual authorization was recommended or expected.

18. Plaintiff did not execute any document affirmatively opting out of the dual-authorization security procedure for outgoing wire transfers.

19. Notwithstanding the absence of any affirmative opt-out or modification agreed to by Plaintiff, Defendant maintained Plaintiff's accounts without dual authorization enabled at the

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

time of the unauthorized transfers described herein.

20. These circumstances governed the manner in which electronic payment orders were authenticated and processed from Plaintiff's accounts at the time of the unauthorized transfers described below.

**The Unauthorized Account Takeover**

21. Plaintiff was the victim of a cybercrime account takeover during which unknown third parties, posing as representatives of Defendant in connection with a legitimate banking transaction, induced Plaintiff's employee to disclose a temporary authentication credential transmitted through Defendant's security system.

22. The disclosure occurred under the belief that the communication originated from Defendant and was required to verify an authorized transaction. The credential was thereafter used by unauthorized actors to obtain control of Plaintiff's online banking session and initiate thirteen (13) electronic funds transfers that Plaintiff neither initiated nor authorized, resulting in substantial loss of account funds.

23. Beginning at approximately 1:38 p.m. on December 2, 2025, the initial unauthorized payment order was transmitted shortly after a successful login to Plaintiff's online banking session from a previously unrecognized internet protocol ("IP") address.

24. The login originated from a device, location, and access environment not previously associated with Plaintiff's ordinary banking activity.

25. Within minutes, multiple wire transfer requests were submitted to 13 distinct beneficiaries, unknown to Plaintiff.

26. The transfers were initiated in rapid succession and represented a significant departure from Plaintiff's historical account activity.

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

27. During the same sequence of activity, funds were transferred between Plaintiff's accounts and approximately $200,000.00 was advanced from Plaintiff's available commercial line of credit to fund outgoing transfers to thirteen (13) distinct beneficiary accounts.

28. At approximately 2:30 p.m., First Horizon Vice President and Private Banking Representative, Maria Paulsen, contacted Plaintiff's employee regarding activity on the accounts.

29. At the time of this communication, unauthorized payment activity remained ongoing or pending completion within Defendant's payment processing system.

30. Plaintiff did not initiate, approve, or intend to authorize any of the payment orders described herein.

31. Upon learning of the unauthorized transfers, Plaintiff immediately confirmed to First Horizon that the transactions were fraudulent and unauthorized.

32. Plaintiff requested that First Horizon secure the accounts and initiate recall efforts with receiving financial institutions.

33. Plaintiff promptly retained an independent information technology provider to investigate whether its internal systems had been compromised. The forensic review determined that Plaintiff's internal network and office computer systems had not been breached and that the incident was consistent with a social-engineering account takeover.

34. Plaintiff reported the incident to federal law enforcement through submission of a complaint to the Federal Bureau of Investigation's Internet Crime Complaint Center ("IC3").

35. Plaintiff fully cooperated with all requests for information relating to investigation and recovery of the transferred funds. Plaintiff undertook all reasonable steps available to mitigate further loss once the unauthorized activity was discovered.

36. On January 15, 2026, First Horizon advised that receiving financial institutions

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

were contacted only "before the end of the day."

37. Despite receiving notice of suspected fraud during the afternoon of December 2, 2025, payment processing activity associated with the unauthorized transfers continued after First Horizon became aware of the unauthorized activity.

38. The delay occurred during a critical recovery window in which prompt interbank notification materially increases the likelihood of recovering fraudulently transferred funds.

39. At no time did Plaintiff ratify, adopt, or benefit from the unauthorized payment orders described herein.

**COUNT I**
**Violation of Florida Uniform Commercial Code — Unauthorized Funds Transfers**
*(Fla. Stat. §670.204)*

41. Plaintiff realleges and incorporates paragraphs 1 through 39 as though fully set forth herein.

42. Chapter 670, Florida Statutes, governs electronic funds transfers and allocates the risk of loss between a bank and its customer when payment orders are issued.

43. On December 2, 2025, a series of payment orders directing wire transfers from Plaintiff's accounts maintained at Defendant First Horizon Bank were transmitted through Defendant's electronic banking system during an unauthorized account takeover event.

44. The payment orders were initiated by unknown third parties who obtained unauthorized access to Plaintiff's online banking session through a cyber-enabled fraud scheme.

45. Plaintiff did not initiate, authorize, approve, or intend to authorize the payment orders.

46. Defendant accepted and executed the payment orders and transferred funds totaling approximately $604,500.00 from Plaintiff's accounts to third-party beneficiaries.

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

47. The payment orders were not effective as orders of Plaintiff because they were issued by unauthorized third parties and were not authorized by Plaintiff within the meaning of Chapter 670, Florida Statutes.

48. Pursuant to § 670.204(1), Florida Statutes, a receiving bank that accepts a payment order not authorized by its customer must refund the payment and recredit the customer's account together with applicable interest.

49. Defendant has failed and refused to refund the unauthorized transfers or recredit Plaintiff's accounts.

50. As a direct and proximate result of Defendant's acceptance of unauthorized payment orders, Plaintiff sustained damages together with interest, costs, and other damages permitted by law.

WHEREFORE, Plaintiff demands judgment pursuant to Fla. Stat. 670.204 against Defendant for all compensatory damages recoverable under Florida law, including, pre-judgment and post-judgment interest as permitted by law, costs of this action, and such other and further relief as the Court deems just and proper.

**COUNT II**
**Violation of Florida Uniform Commercial Code — Security Procedures**
*(Fla. Stat. § 670.202)*

53. Plaintiff realleges and incorporates paragraphs 1 through 39 as though fully set forth herein.

54. Section 670.202, Florida Statutes, governs when a bank may treat a payment order as effective based upon verification pursuant to a security procedure agreed upon between the bank and its customer.

55. Following the institutional merger through which Plaintiff's accounts were

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

transferred to Defendant, Plaintiff did not execute any affirmative opt out modifying Defendant's default security procedures governing verification of payment orders.

56. Notwithstanding the absence of any affirmative opt out, Defendant maintained Plaintiff's accounts without the default dual authorization enabled at the time of the unauthorized transfers.

57. Defendant processed and accepted payment orders using authentication procedures unilaterally established and administered by Defendant through its internal systems.

58. Under these circumstances, Defendant did not verify the payment orders using the dual-authorization security procedure applicable to Plaintiff's accounts, in the absence of an affirmative opt-out.

59. Because the payment orders were not verified in accordance with the dual-authorization security procedure that Defendant represented as its default requirement, and because Plaintiff did not agree to any affirmative opt-out of that procedure, Defendant is not entitled to treat the payment orders as effective orders of Plaintiff under § 670.202, Florida Statutes.

60. Plaintiff suffered damages as a direct result of Defendant's acceptance and execution of unauthorized payment orders.

WHEREFORE, Plaintiff demands judgment against Defendant for all compensatory damages recoverable under Florida law, including, pre-judgment and post-judgment interest as permitted by law, costs of this action, and such other and further relief as the Court deems just and proper.

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

**COUNT III**
**Negligence**

63. Plaintiff realleges and incorporates paragraphs 1 through 39 as though fully set forth herein.

64. Independent of Defendant's duties under Chapter 670, arising from Defendant's undertaking to assist Plaintiff after learning of suspected fraud, Defendant owed Plaintiff a duty to exercise reasonable care in responding to known or suspected fraudulent activity.

65. At approximately 2:30 p.m. on December 2, 2025, Defendant's Vice President and Private Banking Representative contacted Plaintiff regarding suspicious account activity, at which time Defendant was placed on actual notice of suspected fraud.

66. Plaintiff immediately confirmed that the transfers were unauthorized and requested that Defendant secure the accounts and initiate recall efforts.

67. At the time Defendant received notice of the fraud, payment processing activity associated with the unauthorized transfers remained ongoing or pending completion.

68. Defendant failed to exercise reasonable care by, among other things, failing to promptly halt payment processing, failing to timely secure Plaintiff's accounts, and delaying notification to receiving financial institutions during the critical recovery window.

69. Defendant's conduct following notice of the fraud extended beyond the passive mechanics of funds transfer processing and constituted independent negligent conduct.

70. As a direct and proximate result of Defendant's negligence, Plaintiff sustained substantial financial loss.

WHEREFORE, Plaintiff demands judgment against Defendant for all compensatory damages recoverable under Florida law, including, pre-judgment and post-judgment interest as permitted by law, costs of this action, and such other and further relief as the Court deems just and

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

proper.

**COUNT IV**
**Unjust Enrichment**

71. Plaintiff re-alleges and incorporates paragraphs 1 through 39 as if fully set forth herein.

72. During the account takeover event described above, Defendant permitted and processed an unauthorized account draw involving Plaintiff's commercial line of credit in the approximate amount of $200,000.00.

73. As a result of that transaction, Defendant created indebtedness in Plaintiff's name and began assessing interest, fees, and finance charges associated with the line of credit advance.

74. Plaintiff did not authorize the credit line draw and received no benefit from the funds transferred during the fraud event.

75. Defendant has retained and continues to retain financial benefits arising from the unauthorized credit advance, including interest accruals, fees, and related charges.

76. Under the circumstances, it would be inequitable for Defendant to retain such benefits where the indebtedness arose from the same unauthorized transactions and security procedure failures described herein.

77. Plaintiff has demanded reversal of the line of credit advance and associated charges, but Defendant has refused or failed to do so.

78. Defendant has therefore been unjustly enriched at Plaintiff's expense.

79. Equity and good conscience require restitution to Plaintiff, including reversal of the line of credit obligation and disgorgement of all interest, fees, and charges arising from the unauthorized advance.

**WHEREFORE**, Plaintiff demands judgment against Defendant for restitution,

NOT AN OFFICIAL COPY - PUBLIC ACCESS

disgorgement of improperly retained benefits, cancellation or reversal of the line of credit indebtedness, costs, interest, and such further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

**ARMSTRONG TEASDALE LLP**
355 Alhambra Circle, Suite 1200
Coral Gables, Florida 33134
Telephone: (305) 371-8809

By: /s/ *Glen H. Waldman*
Glen H. Waldman, Esq.
Fla. Bar No. 618624
Eduardo J. Cruz, Esq.
Fla. Bar No. 1039626
gwaldman@atllp.com
ecruz@atllp.com

FOR SERVICE OF PLEADINGS:
ecf@atllp.com

NOT AN OFFICIAL COPY - PUBLIC ACCESS