**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No.: 1:26-cv-23804**

NOSICH & GANZ, ATTORNEYS AT LAW,

Plaintiff,

vs.

FIRST HORIZON BANK,

Defendant.
_________________________________________ /

**DEFENDANT'S PARTIAL MOTION TO DISMISS CLASS ACTION COMPLAINT**

Defendant, First Horizon Bank ("First Horizon" or "Defendant"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6), hereby respectfully requests this Court dismiss Counts II, III, and IV of the Complaint for Damages (the "Complaint") filed by Plaintiff, Nosich & Ganz, P.A. ("Plaintiff"). In support, Defendant states as follows:

## I. PRELIMINARY STATEMENT

Plaintiff's lawsuit is premised on alleged unauthorized transfers from its banking accounts at First Horizon. (ECF No. 1-2, ¶ 1.) Plaintiff's Complaint is fatally deficient in three of its four counts, and each should be dismissed with prejudice: Count II purports to state a cause of action under Fla. Stat. § 670.202, a statute that creates no cause of action at all; Count III asserts a negligence claim that is preempted by Florida's Article 4A of the Uniform Commercial Code ("UCC"), alleges duties that do not exist under Florida law, and is squarely barred by the independent tort doctrine; and Count IV seeks unjust enrichment even though Plaintiff conferred

no benefit on First Horizon, has an adequate remedy at law, and acknowledges the existence of express contracts on the same subject matter. None of these defects is curable by amendment.[1]

## II. FACTUAL AND PROCEDURAL BACKGROUND

As alleged in the Complaint, Plaintiff became a customer of First Horizon by virtue of an acquisition and a merger. Plaintiff initially "executed account agreements and related banking documentation governing the operation of its commercial accounts" with Gibraltar Private Bank & Trust Company ("Gibraltar"). (ECF No. 1-2, ¶¶ 8-9.) Plaintiff then executed account documentation with IBERIABANK ("Iberia"), when Iberia acquired Gibraltar. (*Id.* at ¶¶ 11-12.) First Horizon then merged with Iberia, "after which [Plaintiff's] accounts were transferred and converted to accounts maintained by [First Horizon] as successor institution." (*Id.* at ¶ 13.)

Plaintiff's Complaint alleges that unknown third parties were able to take over its accounts by posing to Plaintiff as representatives of First Horizon, with one of Plaintiff's employees being duped into providing the fraudsters with a temporary authentication credential to verify and allow multiple unauthorized wire transfers from Plaintiff's accounts. (*Id.* at ¶¶ 21-22.) In part, Plaintiff alleges $200,000 was advanced by the fraudsters from Plaintiff's available commercial line of credit to help fund the unauthorized transfers. (*Id.* at ¶ 27.)

[1] First Horizon is moving to dismiss Counts II, III, and IV of the Complaint. Federal courts in Florida have frequently recognized that a partial motion to dismiss extends the time to answer the unchallenged claim until after the court has ruled on the partial motion to dismiss. *See, e.g.*, *Beaulieu v. Bd. of Trs. of Univ. of W. Florida*, No. 3:07cv30/RV/EMT, 2007 WL 2020161, at *2 (N.D. Fla. July 9, 2007); *Ferk v. Mitchell*, No. 14–cv–21916, 2014 WL 7369646, at *1 n.1 (S.D. Fla. Dec. 29, 2014); *Taylor v. Pekerol*, No. 5:14–cv–96–RH–GRJ, 2016 WL 7985259, at *1 (N.D. Fla. Mar. 10, 2016) (compiling case law); *Jacques v. First Liberty Ins. Corp.*, No. 8:16-cv-1240-T-23TBM, 2016 WL 3221082, at *1 (M.D. Fla. June 9, 2016); *Dimension Leasing, Inc. v. Variety of Children's Hosp.*, No. 05-22701-CIV-UNGARO-BENAGES, 2006 WL 8432710, at *1 (S.D. Fla. Jan. 23, 2006). First Horizon respectfully requests that the time for it to respond to Count I of the Complaint be stayed and extended until after this Court's entry of an order on this Motion.

Plaintiff brings four causes of action. The first is styled as "Violation of Florida Uniform Commercial Code – Unauthorized Funds Transfers (Fla. Stat. §670.204)." This claim alleges that the transfers "were not effective as orders of Plaintiff because they were issued by unauthorized third parties and were not authorized by Plaintiff within the meaning of Chapter 670, Florida Statutes," and that Section 670.204 purportedly requires a bank to refund payment orders not authorized by its customers. (*Id.* at ¶¶ 45-48.)

Plaintiff brings a second cause of action for "Violation of Florida Uniform Commercial Code – Security Procedures (Fla. Stat. § 670.202)," noting that a bank may treat a transaction as effective "based upon verification pursuant to a security procedure agreed upon between the bank and its customer." (*Id.* at ¶ 54.) Plaintiff claims that First Horizon "did not verify the payment orders using the dual-authorization security procedure applicable to Plaintiff's accounts, in the absence of an affirmative opt-out," and further claims that the transactions were not effective under Section 670.202. (*Id.* at ¶¶ 58-59.) Plaintiff appears to seek general compensatory damages as a result. (*Id.* at p. 8.)

Plaintiff's third count is for negligence, asserting that, independent of the duties under Chapter 670, Defendant owed a duty to "exercise reasonable care in responding to known or suspected fraudulent activity," contending that such a duty was breached by "failing to promptly halt payment processing, failing to timely secure Plaintiff's accounts, and delaying notification to receiving financial institutions during the critical recovery window." (*Id.* at ¶¶ 64, 68.)

Plaintiff's fourth count is for unjust enrichment, seemingly premised on the allegation that First Horizon allowed "an unauthorized account draw involving Plaintiff's commercial line of credit in the approximate amount of $200,000.00." (*Id.* at ¶ 72.) Plaintiff asserts that First Horizon created this indebtedness in Plaintiff's name and began assessing interest, fees, and finance

charges. (*Id.* at ¶ 73.) Plaintiff claims it would be inequitable for First Horizon to retain these benefits. (*Id.* at ¶ 76.) Plaintiff claims that "[e]quity and good conscience require restitution to Plaintiff, including reversal of the line of credit obligation and disgorgement of all interest, fees, and charges arising from the unauthorized advance." (*Id.* at ¶ 79.)

## II. ARGUMENT AND MEMORANDUM OF LAW

### A. **<u>Standard of Review</u>.**

The purpose of a motion to dismiss filed pursuant to Rule 12(b)(6) is to test the facial sufficiency of a complaint. The rule permits dismissal of a complaint that fails to state a claim upon which relief can be granted. Although a complaint challenged by an opposing party need not contain detailed factual allegations, a plaintiff must provide the "grounds" for his entitlement to relief, amounting to more than a "formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court's analysis is generally limited to the four corners of a complaint and the attached exhibits. *Grossman v. Nationsbank,* 225 F.3d 1228, 1231 (11th Cir. 2000). However, a court may consider records outside the four corners of the complaint if they are central to plaintiff's claims and of undisputed authenticity. *See Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005). Documents need not be physically attached to a complaint to be incorporated by reference. *Id.*

A court must also accept a plaintiff's well-pled facts as true and construe the complaint in the light most favorable to the plaintiff. *Caravello v. Am. Airlines, Inc.,* 315 F.Supp.2d 1346, 1348 (S.D. Fla. 2004) (internal citations omitted). Ultimately, the court must determine whether the well-pled facts "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). A complaint can only survive a Rule 12(b)(6) motion to dismiss if it contains factual allegations that are "enough to raise a right to relief above the speculative level, on the assumption

that all the [factual] allegations in the complaint are true." *Twombly,* 550 U.S. at 555. Finally, a plaintiff will generally be allowed to amend their complaint once as a matter of course. *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001); *Sigler v. Bradshaw*, No. 13-90783-CIV, 2015 WL 1044175, at *4 (S.D. Fla. Mar. 10, 2015). However, no leave to amend need be granted if amendment would be futile and would not serve to cure the defective pleading. *Id.*

**B. <u>Plaintiff Cannot State a Valid Claim Under Fla. Stat. § 670.202</u>.**

Plaintiff's Count II purports to state a cause of action for "Violation of Florida Uniform Commercial Code – Security Procedures (Fla. Stat. § 670.202)." (ECF No. 1-2, ¶¶ 53-60.) But Section 670.202 does not create a cause of action. It is a definitional provision that establishes when a payment order is "authorized" or "effective"—nothing more. A different code provision—Fla. Stat. § 670.204—provides the sole remedy for an unauthorized wire transfer under Florida's UCC Article 4A. Because no independent cause of action exists under Section 670.202, Count II must be dismissed.

Fla. Stat. § 670.202 states:

> (1) A payment order received by the receiving bank is the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency.
> (2) If a bank and its customer have agreed that the authenticity of payment orders issued to the bank in the name of the customer as sender will be verified pursuant to a security procedure, a payment order received by the receiving bank is effective as the order of the customer, whether or not authorized, if the security procedure is a commercially reasonable method of providing security against unauthorized payment orders and the bank proves that it accepted the payment order in good faith and in compliance with the security procedure and any written agreement or instruction of the customer restricting acceptance of payment orders issued in the name of the customer. The bank is not required to follow an instruction that violates a written agreement with the customer or notice of which is not received at a time and in a manner affording the bank a reasonable opportunity to act on it before the payment order is accepted.

Under the statute, a payment order includes a wire transfer request, while a receiving bank is the bank which receives the wire transfer request from the customer originating the wire transfer. Fla. Stat. § 670.102 (cmt.) ("Article 4A governs a specialized method of payment referred to in the Article as a funds transfer but also commonly referred to in the commercial community as a wholesale wire transfer."); Fla. Stat. § 670.103(d) ("'Receiving bank' means the bank to which the sender's instruction is addressed."). By its terms, Fla. Stat. § 670.202 creates no cause of action. It merely states the procedure for determining whether a transaction is authorized or effective. The language of Fla. Stat. § 670.204 makes this point clear, as it provides that a customer may receive a refund and interest on a payment order that it is "not authorized and not effective as the order of the customer **under s. 670.202**." Fla. Stat. § 670.204 (emphasis added); *see also Anderson v. Branch Banking & Tr. Co.*, 119 F. Supp. 3d 1328, 1348 (S.D. Fla. 2015) ("Thus, where there exists a commercially reasonable security procedure, the bank will be insulated from liability.").

Despite the clear absence of a cause of action, Plaintiff's Count II attempts to bring a freestanding claim for violation of Section 670.202 (ECF No. 1-2, ¶¶ 53-60) separate and apart from Plaintiff's Section 670.204 claim (*Id.* at ¶¶ 41-50). Count II includes no acknowledgment of the limited remedies available under Chapter 670 and instead seeks broad compensatory damages. (*Id.* at ¶ 60, p. 8.) Plaintiff appears to be trying to circumvent the relief limitation in Section 670.204, which restricts recovery to reimbursement plus interest, by recasting Section 670.202 as an independent statutory violation. This is impermissible. Section 670.202 supplies no private right of action, and Count II should be dismissed for failure to state a claim.

### C. <u>Plaintiff Fails to State a Valid Claim for Negligence</u>.

Plaintiff has also brought a negligence claim, alleging that "Defendant owed Plaintiff a duty to exercise reasonable care in responding to known or suspected fraudulent activity" and

contending that Defendant failed to comply with that alleged duty by "failing to promptly halt payment processing, failing to timely secure Plaintiff's accounts, and delaying notification to receiving financial institutions during the critical recovery window." (ECF No. 1-2, at ¶¶ 64, 68.) However, Plaintiff's negligence claim fails as a matter of law for three independent reasons: (1) this claim is preempted by the UCC; (2) Plaintiff alleges duties that do not exist under Florida law; and (3) the claim is barred by the independent tort doctrine. Accordingly, Count III of the Complaint should be dismissed.

"To state a negligence claim under Florida law, a plaintiff 'must allege four elements: a duty, breach of that duty, causation, and damages.'" *RV Kountry v. Truist Bank*, No. 2:24-CV-0036-JLB-NPM, 2025 WL 744271, at *5 (M.D. Fla. Mar. 7, 2025) (quoting *Virgilio v. Ryland Grp.*, Inc., 680 F.3d 1329, 1339 (11th Cir. 2012)). "The duty element of negligence is a threshold legal question; if no legal duty exists, then no action for negligence may lie." *Id.* (quoting *Jenkins v. W.L. Roberts, Inc.*, 851 So. 2d 781, 783 (Fla. 1st DCA 2003)).

As an initial matter, Plaintiff's negligence claim fails because it is preempted by Florida's Article 4A. Plaintiff argues its negligence claim is "Independent of Defendant's duties under Chapter 670" and concerns "conduct following notice of the fraud extended beyond the passive mechanics of funds transfer processing and constituted independent negligent conduct." (ECF No. 1-2, at ¶¶ 64, 69.) Plaintiff is wrong. The Eleventh Circuit has recognized that Article 4A is "intended to be the **exclusive means** of determining the rights, duties and liabilities of the affected parties in any situation covered by the particular provisions of the Article" and held that "**resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in Article 4A**." *Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1274–75 (11th Cir. 2003) (emphasis added).

Florida courts have made clear that Article 4A preempts common law claims involving allegations of unauthorized wire transfer requests. *See, e.g.*, *Capten Trading Ltd. v. Banco Santander Int'l*, No. 17-20264-CIV, 2018 WL 1558272, at *4 (S.D. Fla. Mar. 29, 2018) ("At bottom, all of Capten's common-law claims rest on Capten's allegations that the Bank mishandled unauthorized wire transfer requests. As such, the Court finds Article 4A provides the exclusive remedy to address Capten's claims."); *List Industries, Inc. v. Wells Fargo Bank, N.A.*, No. 17-CV-61204, 2018 WL 4334876, at *4-5 (S.D. Fla. Sept. 11, 2018) (allegations that duties breached by a bank's allegedly failing to notice and stop money laundering were preempted as "Plaintiff's claim rests solely on allegations related to the unauthorized transactions").

To the extent Plaintiff has attempted to plead its allegations to avoid Article 4A preemption, Plaintiff cannot do so here. Plaintiff's conclusory allegations regarding the bank's alleged response to suspected or known fraudulent activity are devoid of the kind of wholly separate transactions or promises that Florida courts have found necessary to move a case outside of UCC Article 4A and its controlling provisions regarding unauthorized funds transfers. *Compare, e.g.*, *Anderson v. Branch Banking & Tr. Co.*, 119 F. Supp. 3d 1328, 1357-1358 (S.D. Fla. 2015) (holding that claims that stemmed from allegedly allowing accounts to be opened in the plaintiffs' names with forged signatures and/or improper authorization or identification were not preempted); *Biondi v. BB&T*, No. 1:18-CV-22521-UU, 2019 WL 13217964, at *5 (S.D. Fla. Feb. 7, 2019) (allegations of failures to verify changes to account parameters and allowing improper access were insufficient to avoid preemption as they were "devoid of allegations that a third party fraudulently opened an account in Plaintiffs' name" and were "[a]t its core…allegations that BB&T was negligent in permitting unauthorized wire transfers") (compiling case law). Because Plaintiff has not alleged and cannot

allege conduct outside the scope of the alleged unauthorized wire transfers, Count III is preempted by the UCC and barred as matter of law.

Moreover, even if Plaintiff's claim could survive preemption, it still would only be viable if a tort duty was owed and had been breached, which is plainly not the case. It is well recognized that a bank's duties and obligations do not include investigating fraud, monitoring accounts, or noticing or notifying a customer of fraudulent activity. *See, e.g.*, *RV Kountry v. Truist Bank*, No. 2:24-CV-0036-JLB-NPM, 2025 WL 744271, at *5 (M.D. Fla. Mar. 7, 2025) (noting that "[b]oth the Eleventh Circuit and the Florida Supreme Court agree that Florida law does not impose a duty on a bank to investigate fraudulent transactions" and rejecting claims that duties exist to maintain, protect and secure a customer's private and financial information); *Lawrence v. Bank of Am., N.A.*, 455 Fed. Appx. 904, 907 (11th Cir. 2012) ("Although Plaintiffs alleged the transactions were atypical and therefore Bank of America should have known of the Ponzi scheme, such allegations are insufficient under Florida law to trigger liability. Florida law does not require banking institutions to investigate transactions."); *Lynne M. Bucklin v. Bank of Am., N.A.*, No. 2:24-CV-278-JLB-NPM, 2025 WL 1504043, at *9 (M.D. Fla. Mar. 11, 2025) ("But, even though the allegations are separate and distinct, Florida law does not impose a duty on banks to investigate transactions."); *Freeman v. Dean Witter Reynolds, Inc.*, 865 So. 2d 543, 548-549 (Fla. 2d DCA 2003) ("When one establishes a bank account, the bank is obligated to deposit legal transfers into the account and to honor checks and other usual debits against the account. We would radically alter the law of banking if we required banks to review credit card accounts and checking accounts to make certain that their customers were spending their money wisely."); *Cheese & Grill Rest., Inc. v. Wachovia Bank, N.A.*, 970 So. 2d 372, 375 (Fla. 3d DCA 2007) ("As in so many defalcations, the bank and its computers merely processed the checks provided to them by the

embezzler, and there is no indication that anyone with either bank could or should have detected the scheme. Absent extraordinary circumstances that were not established here, Florida's Uniform Commercial Code and bank-customer agreements place the burden of reviewing statements and controlling the transmittal of signed checks upon the customer.").

Finally, the independent tort doctrine bars a plaintiff from litigating contractual claims via a tort cause of action. *See, e.g., Elec. Sec. Sys. Corp. v. S. Bell Tel. And Tel. Co.*, 482 So. 2d 518, 519 (Fla. 3d DCA 1986) ("Since a breach of contract, alone, cannot constitute a cause of action in tort, the trial court properly dismissed the negligence count. It is only when the breach of contract is attended by some additional conduct which amounts to an independent tort that such breach can constitute negligence.") (internal citation omitted); *Island Travel & Tours, Ltd., Co. v. MYR Indep., Inc.*, 300 So. 3d 1236, 1239-1240 (Fla. 3d DCA 2020) ("It is a fundamental, long-standing common law principle that a plaintiff may not recover in tort for a contract dispute unless the tort is independent of any breach of contract."); *Alhassid v. Bank of Am., N.A.*, 60 F.Supp.3d 1302, 1318 (S.D. Fla. 2014) ("Fundamental contractual principles continue to bar a tort claim where the offending party has committed no breach of duty independent of a breach of its contractual obligations.") (quoting *Freeman v. Sharpe Res. Corp.*, No. 6:12-cv-1584, 2013 WL 2151723, at *8 (M.D. Fla. May 16, 2013)); *see also Dickson v. Wells Fargo Bank, N.A.*, No. 25-80095-CIV, 2025 WL 1517528, at *5 (S.D. Fla. May 16, 2025) (holding that the independent tort doctrine barred negligence claims against a bank for failure to maintain account privacy and security, allowing unauthorized access and transfers, and failing to recognize red flags). Duties with respect to an account arise from the contractual relationship between the parties. *See McCrory Stores Corp. v. Tunnicliffe*, 140 So. 806, 807 (Fla. 1932); *MJZ Corp. v. Gulfstream First Bank & Tr.*,

*N.A.*, 420 So. 2d 396, 397 (Fla. 4th DCA 1982); *ReneG Corp v. JPMorgan Chase Bank, N.A.*, No. 25-CV-20595, 2025 WL 2239263, at *4-5 (S.D. Fla. Aug. 6, 2025).

As found by the court in *Dickson v. Wells Fargo Bank, N.A.*, 812 F. Supp. 3d 1281 (S.D. Fla. 2025):

> Plaintiff's repleaded negligence claim again runs afoul of these principles. In Count I, Plaintiff alleges that Wells Fargo "owed a duty to Plaintiff, as its customer, to provide a commercially reasonable security method against unauthorized payment orders". "[T]he relationship between a bank and its depositing customer is contractual." *MJZ Corp. v. Gulfstream First Bank & Tr., N. A.*, 420 So. 2d 396, 397 (Fla. Dist. Ct. App. 1982) (citation omitted). Just as in his Initial Complaint, Plaintiff's negligence allegations in the SAC still stem from Wells Fargo's "contractual duties to its depositor". **Thus, Plaintiff's negligence claim alleges duties based upon Plaintiff's contractual customer relationship with Wells Fargo instead of any independent tortious conduct, so Plaintiff's negligence claim is again barred under the independent tort doctrine**.

*Id.* at 1286-1287 (internal citations omitted and emphasis added) (also finding that allegations that the bank failed to initiate and complete error resolution investigations following the loss were "predicated entirely on Plaintiff's relationship to Wells Fargo as its customer, which is once again a contractual relationship").

These cases recognize that a bank does not have a general duty under Florida law to monitor its customers' accounts to prevent fraud or take certain actions once fraud is discovered. Courts have made clear that duties with respect to an account arise from and are predicated on the parties' contractual relationship. Plaintiff acknowledges the contractual relationship it has with First Horizon, referencing its original agreements with Gibraltar and Iberia, which were converted into First Horizon commercial banking accounts. (ECF No. 1-2, ¶¶ 8-9, 11-14), (*Id.* at ¶ 14). In summary, Plaintiff attempts to allege negligence by First Horizon within the scope of the Parties' banking relationship, while also alleging that it entered express written agreements with respect to the same subject matter concerning its bank accounts.

As the numerous cases cited above have recognized, Plaintiff is attempting to impose duties on First Horizon that are not recognized by Florida law and can only arise from and within the scope of the Parties' contractual relationship. That relationship is the source of any duties owed by First Horizon to Plaintiff, and Plaintiff has not pointed to and cannot identify any provisions that were breached. For these reasons, Plaintiff has failed to allege a viable duty to sustain a negligence claim, and even if such duties existed, they would be barred by the independent tort doctrine.

Ultimately, Plaintiff's Count III tracks the problems identified in *Biondi v. Branch Banking & Trust Company*, No. 1:18-CV-22521-UU, 2019 WL 1321796 (S.D. Fla. Feb. 7, 2019), in which the Court ultimately concluded:

> But under any theory of negligence that the Court can distill from the amended complaint, it fails. As BB&T rightly notes, to the extent Plaintiffs' negligence argument can be construed as asserting that BB&T breached a duty to follow its own internal procedures, no such duty exists. If, as Plaintiffs seem to assert in their response, their claim is that BB&T breached a duty of ordinary care under Florida common law, such a claim is preempted by Florida's UCC. If Plaintiffs' (sic) seek to assert that BB&T breached a duty of ordinary care under Florida's UCC, they have pled no factual support for such a claim. And Plaintiffs' new allegations asserting that BB&T failed to verify account changes is merely a rehashing of its previously dismissed breach of the duty to monitor claim.

*Id.* at *3. For the same reasons, Count III must also be dismissed.

**D. <u>Plaintiff Fails to State a Valid Claim for Unjust Enrichment</u>.**

Plaintiff's Count IV for unjust enrichment likewise fails for multiple reasons, including failing to meet the required elements of an unjust enrichment claim and being barred by the independent tort doctrine. For these reasons, Count IV should be dismissed.

A claim for unjust enrichment is often referred to as a quasi-contract, or a contract implied in law. *Com. P'ship 8098 Ltd. P'ship v. Equity Contracting Co., Inc.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997). A quasi-contract is a legal fiction "adopted to provide a remedy where one party was unjustly enriched, [or] where that party received a benefit under circumstances that made it

unjust to retain it without giving compensation." *Com. P'ship*, 695 So. 2d at 386. The elements of a cause of action for unjust enrichment are: (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without first paying the value thereof to the plaintiff. *Agritrade, LP v. Quercia*, 253 So. 3d 28, 33 (Fla. 3d DCA 2017); *see also Gibson v. Lynn Univ., Inc.*, 504 F. Supp. 3d 1335, 1344 (S.D. Fla. 2020) (citing *Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*, 1 So. 3d 400, 404 (Fla. 3d DCA 2009)). "It is well settled in Florida that unjust enrichment is an equitable remedy and is, therefore, not available where there is an adequate legal remedy." *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1235 (S.D. Fla. 2021) (quoting *Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005)). Moreover, a party may not use equitable claims to try and get around an express agreement between the parties. *See, e.g., EnSolTech USA LLC v. A-Z Power Sols., LLC*, No. 8:20-CV-1751-MSS-JSS, 2021 WL 8775768, at *4 (M.D. Fla. Apr. 16, 2021); *Osteen v. Morris*, 481 So. 2d 1287, 1289-1290 (Fla. 5th DCA 1986); *Synderburn v. Moxley*, 652 So. 2d 945, 947 (Fla. 5th DCA 1995); *Shands Teaching Hosp. and Clinics, Inc. v. Beech Street Corp.*, 899 So. 2d 1222, 1227, n.10 (Fla. 1st DCA 2005); *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So.2d 696, 697 (Fla. 1st DCA 2008); *Fulton v. Brancato*, 189 So. 3d 967, 969 (Fla. 4th DCA 2016).

The same principles apply in the context of banking relationships. *See, e.g.*, *ReneG Corp v. JPMorgan Chase Bank, N.A.*, No. 25-CV-20595, 2025 WL 2239263, at *9-10 (S.D. Fla. Aug. 6, 2025) (existence of deposit agreement requires dismissal of claim for unjust enrichment, even in the alternative, where no allegation is made that the agreement is invalid); *Sekula v. Residential Credit Sols., Inc.*, No. 615CV2104ORL31KRS, 2016 WL 1559142, at *4 (M.D. Fla. Apr. 18,

2016) ("The Sekulas purport to bring their unjust enrichment claim against Residential Credit in the alternative to their contractual claim, but no party has suggested that the mortgage agreement is invalid. For this reason as well, Count III is due to be dismissed."); *Kirchner v. Ocwen Loan Servicing, LLC*, 257 F. Supp. 3d 1314, 1325 (S.D. Fla. 2017).

Plaintiff does not allege that it provided a benefit to First Horizon. Instead, Plaintiff claims there was an unauthorized account draw against a commercial line of credit by a non-party fraudster, but Plaintiff does not claim to have paid that draw. (ECF No. 1-2, at ¶¶ 72-75.) Plaintiff also does not attempt to allege it has an inadequate remedy at law. Moreover, Plaintiff can hardly plausibly argue that a dispute as to the validity and reversibility of a draw against a commercial line of credit is anything other than a dispute under a contractual relationship, particularly given the contractual rights to interest, fees, and charges which Plaintiff is alleging First Horizon has or could assert with respect to the draw. Accordingly, Plaintiff's claims are barred both by the existence of an express agreement and by the independent tort doctrine as discussed above. Count IV is not a viable unjust enrichment claim, and it should be dismissed.

## III. CONCLUSION

It is Plaintiff's duty to plead a valid and plausible cause of action upon which this Court could grant relief. Plaintiff's Count II fails because Section 670.202 creates no independent cause of action; Count III is barred by preemption, the lack of an actionable duty under Florida law, and by the independent tort doctrine given the express written agreements Plaintiff itself has pled; and Count IV fails to state the elements of unjust enrichment and is likewise barred by the existence of an express contract. For these reasons, Counts II, III, and IV of the Complaint should be dismissed with prejudice.

WHEREFORE, Defendant, First Horizon Bank, respectfully requests that this Court enter an order pursuant to Fed. R. Civ. P. 12(b)(6) dismissing Counts II, III, and IV with prejudice, along with granting any and all additional relief this Court deems just and proper.

**No Certification Required Under Local Rule 7.1(a)(1)(3)**

As Defendant is seeking partial dismissal for Plaintiff's failure to state a cause of action pursuant to Fed. R. Civ. P. 12(b)(6), no conference as to the requested relief is required pursuant to the Local Rules of this Court.

Submitted June 22, 2026.

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
200 East Broward Blvd., Suite 2000
Fort Lauderdale, Florida 33301
Telephone: (954) 768-1600
Facsimile: (954) 333-3930
*Counsel for Defendant, First Horizon Bank*

By: */s/ Spencer D. Leach*
Spencer D. Leach
Florida Bar No.: 110753
*sleach@bakerdonelson.com*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 22, 2026, a true and correct copy of the foregoing was filed electronically via the Court's CM/ECF System, which will send notice to all parties of record, including, but not limited to, the following:

Glen H. Waldman, Esq.
Eduardo J. Cruz, Esq.
**ARMSTRONG TEASDALE, LLP**
355 Alhambra Circle, Suite 1200
Coral Gables, Florida 33134
gwaldman@atllp.com
ecruz@atllp.com
*Counsel for Plaintiff*

*/s/ Spencer D. Leach*